# EXHIBIT B

## SECURED PROMISSORY BALLOON NOTE

$10,700,000.00                                                                                    May 17, 2022
_____, New York

FOR VALUE RECEIVED, BD781 LLC, a New York Limited Liability Company having an address at 4403 15th Street STE 114, Brooklyn, New York 11219 (the "**Maker**"), promises to pay to the order of GOLDEN BRIDGE R1 LLC D/B/A GOLDEN BRIDGE FUNDING, a Delaware Limited Liability Company having its principal place of business at c/o 107-14 71st Road, 2nd Floor, Forest Hills, New York 11375 (hereinafter referred to, together with each subsequent holder(s) hereof, as "**Holder**"), at the above address, or at such other place as Holder may designate in writing, the principal sum of Ten Million Seven Hundred Thousand AND 00/100 DOLLARS (10,700,000.00) (the "**Principal Sum**"), with interest thereon computed from the date hereof until maturity, whether on the Maturity Date (as hereinafter defined), by acceleration, or otherwise, at the rate equal to Nine AND 25/100 Percent (9.25%) per annum ("Rate") **or** daily Secured Overnight Financing Rate (SOFR) + 8.50% ("Adjusted Interest Rate"), **whichever is higher** ("Prevailing Interest Rate").

On the 2nd day of each month (which is the 1st day of the interest cycle) ("Rate Adjusted Date" or "RAD") Lender shall review the SOFR that is published by The Federal Reserve Bank of New York on that day, and the Lender will then determine the Adjusted Interest Rate.

In the event that the Adjusted Interest Rate is higher than the Rate on the RAD, the Adjusted Interest Rate shall be the interest rate applied to the loan that month.

The interest that is required hereof is the rate Maker will pay as long as Maker is not in any default pursuant to the provisions hereof. If Maker shall be in any default, and for the entire period Maker is in default, Maker shall pay interest at a yearly rate of 24.0% ("Default Interest Rate"). However, the Default Interest Rate shall not exceed the maximum rate allowed by law.

1. **Promissory Note**. This Promissory Note ("**Note**") is secured by, among other things, that certain first Mortgage, Assignment of Leases and Rents and Security Agreement of even date herewith (the "**Mortgage**" ), granted by Maker, pursuant to which Maker has mortgaged to Holder its property located in the County of Brooklyn, State of New York, known by the street address of N/A St Johns Place, Brooklyn, NY 11238 and 421 Lincoln Place Brooklyn, NY 11238 as further described in the Mortgage (the "**Property**") and by certain other documents executed by Maker and certain guarantors as additional security for the repayment of the sums due under the Note and Mortgage (the "**Loan Documents**").

2. **Payments**. The Principal Sum and interest thereon is and shall be payable as follows:

Maker shall pay to Holder (a) on the date hereof (the "Funding Date") all interest due under this Note for the period commencing on Funding Date through and including June 1,

2022 calculated based on the Prevailing Interest Rate on the date of the closing, (b) on July 1, 2022, and on the second day of each and every month thereafter through and including June 1, 2023 (such date, or such earlier date on which Holder accelerates payment of the indebtedness evidenced hereby pursuant to the provisions hereof or of any of Loan Documents as such term is defined in the Mortgage) being herein referred to as the "**Maturity Date**", monthly payments, in arrears, of interest only on the unpaid balance of the Principal Sum continuing monthly through the Maturity Date. On the Maturity Date, whether by acceleration, prepayment, or otherwise, the outstanding balance of the Principal Sum, together with accrued and unpaid interest and any other amounts due and payable to the Holder hereunder, under the Mortgage or the Loan Documents, shall be paid in full. Interest shall for all purposes hereunder be calculated on the basis of a three hundred sixty (360) day year and charged on the basis of a three hundred sixty-five (365) or three hundred sixty-six (366) day year counting the number of days elapsed.

3. **Prepayment**. PROVIDED THAT THERE SHALL BE NO EVENT OF DEFAULT (AS HEREINAFTER DEFINED) OUTSTANDING UNDER THIS NOTE, THE MORTGAGE OR ANY OF THE LOAN DOCUMENTS, MAKER MAY PREPAY THE OUTSTANDING BALANCE OF THE PRINCIPAL SUM OF THE LOAN, IN WHOLE OR IN PART, AT ANY TIME ON SIXTY (60) DAYS NOTICE TO HOLDER WITHOUT ANY PREPAYMENT PREMIUM OR PENALTY. HOWEVER, IN THE EVENT THAT SUCH PREPAYMENT IS MADE WITHIN FOUR (4) MONTHS OF THE FUNDING DATE, MAKER SHALL BE RESPONSIBLE FOR PAYMENT OF ALL INTEREST DUE TO HOLDER UP TO AND THROUGH SAID FOUR (4) MONTH PERIOD.

NOTWITHSTANDING THE FOREGOING, FOR ANY PREPAID INTEREST PAYMENTS MADE TO HOLDER, ON THE DATE HEREOF OR THEREAFTER, IN CONNECTION WITH THIS LOAN OR ANY OTHER LOANS ISSUED BY MAKER TO HOLDER, IN THE EVENT THE LOAN IS BEING PAID OFF BEFORE THE PREPAID INTEREST PAYMENTS ARE DEPLETED ACCORDINGLY, THE BALANCE OF SAME SHALL BE RETAINED BY THE LENDER AS A MAINTENANCE FEE.

4. **Default**.

4.1 **Events of Default**. The failure to make any payment as and when required under this Note or the occurrence of any Event of Default (as such term is defined in the Mortgage or any of the Loan Documents) under any of the Loan Documents shall constitute an "Event of Default" under this Note.

4.2 **Remedies**. Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate through and after the entry of a Judgment of Foreclosure and Sale, (b) Holder may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note immediately due and payable and (c) Holder may pursue all rights and remedies available hereunder or under the Loan Documents. Holder's rights, remedies and powers, as provided in this Note or the Loan Documents are cumulative and concurrent, and may be pursued signally, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral

granted or pledged to Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

    4.3 **Costs of Collection**. Maker agrees to pay all costs and expenses of collection incurred by Holder, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Holder of any of its rights or remedies hereunder or under the Loan Documents or the protection of or realization of collateral or in connection with any of Holder's collection efforts, whether or not any action or proceeding on this Note, on the Loan Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Loan Documents.

    4.4 **Default Rate and Late Charges**. From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Holder, interest shall accrue on the outstanding Principal Sum at a rate equal to twenty-four percent (24%) per annum (the "Default Rate"). The Default Rate shall remain in effect until any and all events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidence by this Note. The Default rate shall be in effect at all times after the maturity of the indebtedness evidenced by this Note (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. Holder may collect a late payment fee not to exceed an amount equal to five percent (5%) of any periodic payment not received within ten (10) days of the date such payment is due and payable, said charge constituting liquidated damages, to be assessed from the date upon which such payment was due and payable, and being payable upon demand. Interest shall continue to accrue at the Default Rate (including following the entry of a judgment in favor of Holder) until payment full of all sums due under this Note, the Mortgage or any of the Loan Documents. The provisions of CPLR §5004 are hereby waived and deemed inapplicable. In addition, Maker shall pay to Holder the sum of $50.00 for any payment which is returned for any reason by Maker's bank unpaid. Further, if Maker remits any payment to Holder under this Note, the Mortgage or the Loan Documents which is returned for any reason by Maker's bank unpaid, Holder may, in its sole and absolute discretion, require Maker to remit all future payments due under this Note, the Mortgage or the Loan Documents in the form of a certified or cashier's check made payable to Holder.

    5. **Governing Law: Severability**. This Note shall be construed and enforced in accordance with the internal laws of the State of New York, unless preempted by United States Statute or Federal Law (without giving effect to any principles of conflicts of law). The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair

the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

6. **Waivers**. Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Loan Documents, and in connection with any suit, action or proceeding brought by Holder on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Holder on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

7. **Application of Payments**. Each and every payment made by Maker to Holder in accordance with the terms of the Mortgage and the Loan Documents and all other proceeds received by Holder with respect to the indebtedness evidenced hereby, shall be applied as follows: (a) <u>first</u>, if applicable in accordance with the terms of this Note, to all premiums and other sums payable hereunder or under the Mortgage or any of the Loan Documents (other than pursuant to subdivisions (b) or (c) of this Section 7), (b) <u>second</u>, to all interest at the Interest Rate which shall be due and payable under this Note, and (c) <u>third</u>, in reduction of the outstanding balance of the Principal Sum, or in such other order and priority as determined by Holder in its sole discretion. To the extent that Maker makes a payment or Holder receives any payment or proceeds for Maker's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under any bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Maker hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Holder.

8. **Miscellaneous**.

8.1. **Amendments**. This Note may not be terminated or amended orally, but only by a termination or amendment in writing signed by Holder.

8.2. **Usury**. It is the intention of Maker and Holder to conform strictly to the usury and other laws relating to interest from time to time in force, and all agreements between Maker and Holder, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by demand hereunder or otherwise, shall the amount paid or agreed to be paid to Holder, or collected by Holder for the use, forbearance or detention of the money to be loaned hereunder, or for the payment or performance of any covenant or obligation contained herein or in the Mortgage or in any other agreement given to secure the loan obligations or in any other document evidencing, securing or pertaining to the loan obligations, exceed the maximum amount of interest allowable under applicable law (the "**Maximum Amount**"). If under any circumstances whatsoever fulfillment of any provision hereof or the Mortgage, at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then ipso facto, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Holder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If under any circumstances Holder shall ever receive an amount deemed interest by applicable law, which would exceed the Maximum Amount, such amount that would be excessive interest under applicable usury laws shall be deemed a payment in reduction of the principal amount owing under this Note and shall be so applied to principal and not to the payment of interest, or if such excessive interest shall be deemed to have been a payment made by mistake and shall be refunded to Maker or to any other person making such payment on Maker's behalf.

8.3. **Captions**. The captions of the Sections of this Note are for convenience of reference only and shall not be deemed to modify, explain, enlarge or restrict any of the provisions hereof.

8.4. **Notices**. Notices shall be given under this Note in conformity with the terms and conditions of the Loan Documents.

8.5 **Joint and Several Obligations**. The obligations of Maker under this Note shall be joint and several obligations of Maker and of each Maker, if more than one, and of each Maker's heirs, personal representatives, successors and assigns. The filing of a petition (the "Petition") under Chapter 11 of the United States Code (the "**Bankruptcy Code**"), whether voluntary or involuntary, shall not stay or in any manner abridge or interfere with the right of Holder to proceed against any Maker not subject to such Petition.

8.6 **Time of Essence**. Time is of the essence of this Note and the performance of each of the covenants and agreements on Maker's part to be performed hereunder.

8.7 **No Waiver by Holder**. Neither the exercise of any provision hereof nor the delay in asserting any right granted to Holder (including the acceptance of past due

payments) shall be construed as a waiver by Holder of the right to accelerate the indebtedness evidenced hereby as above provided or to pursue any other remedies available under this Note, the Loan Documents or under any other security document nor shall the exercise of any single or partial exercise of any right, power, privilege or remedy preclude any further exercise thereof. Any waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought, and then only to the extent therein set forth. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. No executory agreement unless in writing and signed by Holder, and no course of dealing between Maker, the endorser(s) or guarantor(s) hereof, or any of them, shall be effective to change or modify or discharge, in whole or in part, this Note.

In the event Holder shall advance or cause to be advanced any amounts to or for the benefit of Maker, on account of insurance premiums, real estate or other taxes, assessments or governmental charges or on account of any other matter which, in the sole discretion of Holder is necessary or desirable to sustain the lien of the Loan Documents or protect any collateral security held by Holder or the Maker's assets, including, but not limited to, payments to avoid the filing of any lien on any of Maker's assets and/or payments to discharge any such lien, the same shall be deemed a part of the Principal Sum and shall bear interest at the Interest Rate until paid in full.

8.8. **Obligations**. Maker acknowledges that this Note and Maker's obligations hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker hereunder or the obligations of any other person or party relating to this Note or the obligations of Maker hereunder. This Note sets forth the entire agreement and understanding of Holder and Maker, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or cross-claim of any nature whatsoever with respect hereto or the obligations of Maker hereunder or the obligations of any other person or party relating hereto in any action or proceeding brought by Holder to collect the outstanding balance of the Principal Sum, accrued and unpaid interest, late charges, and other amounts owing, or any portion thereof, or to enforce, foreclose and realize upon the liens and security interests created by the Loan Documents and any other security document.

8.9 **Use of Funds.** Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

8.10 **General Escrow Reserve.** Borrower shall establish a General Escrow ("General Escrow Account") with Lender in the amount of NA ($NA) Dollars for the payment of interest charges accruing under the Loan, extension fees, and/or for any unpaid liens against the property including but not limited to water and sewer changes, real estate taxes, additional assessments ("Unpaid Charges"). Lender shall have the right to pay for the Unpaid Charges using the funds held in such General Escrow Account. In the event such General Escrow Account shall be exhausted, Borrower shall promptly, upon notice from Lender, replenish such General Escrow Account in an amount reasonably determined by Lender to represent the balance of the Unpaid Charges to accrue over the remaining term of the Loan. In the event of any default

under the Note, or any of the other Loan Documents, Lender shall have the right to apply all sums in the General Escrow Account against the unpaid principal balance of the Loan.

      8.11    **Collection of Checks at Closing.**  Borrower shall deposit with Lender NA post-dated checks for the monthly payments of interest. Lender shall hold said post-dated checks and deposit each check accordingly when it becomes due. In the event of a non-payment of any post-dated check or failure to debit monthly payment of interest via ACH, regardless of whether or not the Borrower later replaces it or otherwise makes the payment, there will be a fee due of $500.00 to compensate Lender for the administrative costs, accounting fees and/or bank fees associated with such non-payment.

      9.    **Participations**.  Holder, at any time and without the consent of Maker, may grant participations in or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the loan obligations, this Note and the Mortgage, any guaranties given in connection with the loan obligations and any collateral given to secure the loan obligations.

      10.    **Venue; Service of Process**.  This Note shall be governed by and construed in accordance with the laws of the State of New York. All actions or proceedings arising in connection with this Note shall be tried and litigated in state or federal courts located in the State of New York, unless such actions or proceedings are required to be brought in another court to obtain subject matter jurisdiction over the matter in controversy. MAKER WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF **FORUM NON CONVENIENS**, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE HEREWITH. IN ANY ACTION AGAINST MAKER, SERVICE OF PROCESS MAY BE MADE UPON MAKER BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ITS ADDRESS ABOVE SET FORTH, WHICH SERVICE SHALL BE DEEMED SUFFICIENT FOR PERSONAL JURISDICTION AND SHALL BE DEEMED EFFECTIVE THREE (3) DAYS AFTER MAILING.

      11.    **Jury Trial Waiver**.  MAKER, AND HOLDER BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MAKER AND BY HOLDER, AND MAKER ACKNOWLEDGES THAT NEITHER HOLDER NOR ANY PERSON ACTING ON BEHALF OF HOLDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. MAKER AND HOLDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MAKER AND HOLDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. MAKER AND HOLDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE

SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

12. **Extension of Term of Loan**.   All references herein to the Maturity Date shall mean the Initial Maturity Date, provided that Maker shall have an opportunity to request an extension to the Maturity Date for one (1) additional **one (1) year** term (the "Extension Option"), which said Extension Option shall be subject to the Holder's approval in their sole and absolute discretion, thereby extending the Maturity Date to the date that is **one (1) year** after the Initial Maturity Date (the "Extended Maturity Date") upon satisfying the following conditions:

12.1 Maker shall have delivered to the Holder written notice of such election no earlier than ninety (90) days and no later than thirty (30) days prior to the Initial Maturity Date;

12.2 Payment by Maker of an extension fee in the amount of **two (2.0%) percent of the Principal Sum**;

12.3 No Default or Event of Default has occurred under the Loan Documents during the term of the Loan; and

12.4 Maker shall have paid all reasonable costs, including but not limited to recording fees and legal fees in connection with the Extension Option.

**INTENTIONALLY LEFT BLANK
SIGNATURE PAGE TO FOLLOW**

IN WITNESS WHEREOF, Maker has caused this Note to be executed as of the day and year first above written.

                              **BD781 LLC**

                              By: _____
                                  Joseph Rubin, Authorized Signatory

STATE OF NEW ~~YORK~~ Jersey    )
                              ) ss:
COUNTY OF __Ocean__        )

On the May 17, 2022 before me, the undersigned, a Notary Public in and for said State, personally appeared, JOSEPH RUBIN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

                                _____
                                      Notary Public

                                        **Daniel Y. Ross, Esq.**
                                        **Attorney At Law**
                                        **State Of New Jersey**