EXHIBIT C



| **NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER** | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

2022052600590005006E4C00

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 41** |
|---|---|---|
| **Document ID:** 2022052600590005 | Document Date: 05-17-2022 | Preparation Date: 05-26-2022 |
| Document Type: MORTGAGE | | |
| Document Page Count: 39 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| BETTER RECORDINGS, LLC<br>1 PARAGON DRIVE - RANY-47421<br>SUITE 150B<br>MONTVALE, NJ 07645<br>REC@BETTERTITLERESEARCH.COM | BETTER RECORDINGS, LLC<br>1 PARAGON DRIVE - RANY-47421<br>SUITE 150B<br>MONTVALE, NJ 07645<br>REC@BETTERTITLERESEARCH.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1177 | 11 | Entire Lot | 478 SAINT JOHNS PLACE |

**Property Type:** DWELLING ONLY - 3 FAMILY

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1177 | 50 | Entire Lot | 419 LINCOLN PLACE |

**Property Type:** COMMERCIAL REAL ESTATE

### CROSS REFERENCE DATA

CRFN_____   *or*   DocumentID_____   *or* _____ Year_____ Reel____ Page_____   *or*   File Number_____

### PARTIES

| **MORTGAGOR/BORROWER:** | **MORTGAGEE/LENDER:** |
|---|---|
| BD781 LLC<br>4403 15TH STREET, SUITE 114<br>BROOKLYN, NY 11219 | GOLDEN BRIDGE RI LLC<br>107-17 71ST ROAD, 2ND FLOOR<br>FOREST HILLS, NY 11375 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| **Mortgage :** | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 10,700,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 10,700,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 53,500.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 120,375.00 | | $ | 0.00 |
| Spec (Additional): | $ | 26,750.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 32,100.00 | | | |
| NYCTA: | $ | 66,875.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 299,600.00 | | | |
| Recording Fee: | $ | 235.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          06-06-2022 16:25
City Register File No.(CRFN):
**2022000225944**

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2022052600590005006C4E80

| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | PAGE 2 OF 41 |
|---|---|

| Document ID: 2022052600590005 | Document Date: 05-17-2022 | Preparation Date: 05-26-2022 |
|---|---|---|
| Document Type: MORTGAGE | | |

**PARTIES**

**MORTGAGEE/LENDER:**
GOLDEN BRIDGE FUNDING
107-17 71ST ROAD, 2ND FLOOR
FOREST HILLS, NY 11375

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS
## AND SECURITY AGREEMENT

### BD781 LLC

(Mortgagor)

to

### GOLDEN BRIDGE R1 LLC D/B/A GOLDEN BRIDGE FUNDING

(Mortgagee)

**Dated: May 17, 2022**

**Property Address:**

**N/A St Johns Place, Brooklyn, NY 11238 and
421 Lincoln Place Brooklyn, NY 11238**

| | |
|---|---|
| **Block:** | 1177 |
| **Lot(s):** | 11 (Formed from Old Lot 7) and 50 (Formed from Old Lot 7) |

| | |
|---|---|
| **County:** | Brooklyn |
| **State:** | New York |

**DOCUMENT PREPARED BY AND WHEN RECORDED, RETURN TO:**

**The Shiponi Law Firm P.C.
107-14 71st Road, 2nd Floor
Forest Hills NY 11375**

THIS MORTGAGE **DOES / DOES NOT (CIRCLE ONE)** ENCUMBER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX (6) RESIDENTIAL DWELLING UNITS HAVING THEIR OWN SEPARATE COOKING FACILITIES.

**THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT ("Mortgage"),** made this the May 17, 2022, from BD781 LLC, a New York Limited Liability Company having an address at 4403 15th Street STE 114, Brooklyn, New York 11219 (**"Mortgagor"**), to GOLDEN BRIDGE R1 LLC D/B/A GOLDEN BRIDGE FUNDING, a Delaware Limited Liability Company having its principal place of business at c/o 107-14 71st Road, 2nd Floor, Forest Hills, New York 11375 (**"Mortgagee"**).

WITNESSETH:

To secure the payment of an indebtedness in the original principal sum of Ten Million Seven Hundred Thousand AND 00/100 DOLLARS ($10,700,000.00), lawful money of the United States of America, to be paid with interest according to a certain Secured Promissory Note of even date herewith made by Mortgagor to Mortgagee (the Secured Promissory Note together with all extensions, renewals or modifications thereof being hereinafter collectively called the **"Note"**) and all other sums due hereunder, under the other Loan Documents (hereinafter defined) and under the Note (said indebtedness and interest due under the Note and all other sums due hereunder, under the Note and under the other Loan Documents being hereinafter collectively referred to as the **"Debt"**), Mortgagor has mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, warranted, pledged, assigned, and hypothecated and by these presents does hereby mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, warrant, pledge, assign and hypothecate unto Mortgagee the real property described in <u>Exhibit "A"</u> attached hereto ( the **"Premises"**) and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the **"Improvements"**);

TOGETHER WITH: all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements, and the property, rights, interests and estates hereinafter described are collectively referred to herein as the **"Mortgaged Property"**):

(a)     all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)     all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the **"Equipment"),** including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the **"Uniform Commercial Code"),** superior in lien to the lien of this Mortgage;

(c)     all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements;

(d)     all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the **"Leases"**) and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the **"Rents"**), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)     all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f)     all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial

Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the **"Intangibles"**); and

(g) all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

**TO HAVE AND TO HOLD** the above granted and described Mortgaged Property unto and to the use and benefit of Mortgagee and its successors and assigns, forever;

**By signing this Security Instrument, Borrower is giving Lender the right to initiate and institute proceedings for the complete or partial foreclosure of this mortgage, which may lead to the sale of the of the Mortgaged Property or any part thereof to the extent permitted and pursuant to the procedures provided by law, and those rights that are stated in this Security Instrument and in the Loan Documents and also those rights that the law gives to lenders who hold mortgages on real property. Borrower is giving Lender these rights to protect Lender from possible losses.**

**PROVIDED, HOWEVER,** these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents (hereinafter defined) in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void;

AND Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

### GENERAL PROVISIONS

1. **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.** Mortgagor shall pay all monthly installments of interest and principal as provided for in the Note and shall repay the Debt on or before the Maturity Date, as such term is defined in the Note (the **"Maturity Date"**) at the time and in the manner provided in the Note and in this Mortgage. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents including, without limitation, the Note and this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which evidences, secures or guarantees all or any portion of the payments due under the Note or otherwise is executed and/or delivered in connection with the Note and this Mortgage, guarantees and agreements (the

"**Loan Documents**") are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein. The Note is evidence of that certain loan made to the Mortgagor by the Mortgagee (the **"Loan"**).

        2.      **Warranty of Title.**    Mortgagor warrants that Mortgagor has good, marketable and insurable title to the Mortgaged Property and has the full power, authority and right to execute, deliver and perform its obligations under this Mortgage and to encumber, mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Mortgagor possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage and that this Mortgage is and will remain a valid and enforceable first lien on and security interest in the Mortgaged Property, subject only to said exceptions. Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

        3.      **Insurance.**

        (a)     Except as provided hereunder, Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall obtain and maintain during the entire term of this Mortgage (the **"Term"**) policies of insurance against loss or damage by fire, lightning, wind and such other perils as are included in a standard "all risk" or "special causes of loss" form, and against loss or damage by all other risks and hazards covered by a standard extended coverage insurance policy including, without limitation, riot and civil commotion, vandalism, malicious mischief, burglary and theft. Such insurance shall be in an amount equal to the greatest of (i) the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation, (ii) the outstanding principal balance of the Loan, and (iii) such amount that the insurer would not deem Mortgagor a coinsurer under said policies. The policies of insurance carried in accordance with this paragraph shall be paid annually in advance and shall contain a "Replacement Cost Endorsement" with a waiver of depreciation and an "Agreed Amount Endorsement". The policies shall have a deductible no greater than $10,000.00 unless agreed to by Mortgagee in writing.

        (b)     Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall also obtain and maintain during the Term the following policies of insurance:

        (i)     Flood insurance if any part of the Mortgaged Property is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Program in an amount at least equal to the outstanding principal amount of the Loan or the maximum limit of coverage available with respect to the Improvements and Equipment under said Program, whichever is less.

(ii)     Comprehensive General Liability or Commercial General Liability insurance, including a broad form comprehensive general liability endorsement and coverage for broad form property damage, contractual damages, personal injuries (including death resulting therefrom), containing minimum limits per occurrence of $1,000,000.00 and $2,000,000.00 in the aggregate for any policy year.

(iii)    Worker's compensation insurance with respect to any employees of Mortgagor, as required by any governmental authority or legal requirement.

(iv)     During any period of repair or restoration, builder's "all risk" insurance in an amount equal to not less than the full insurable value of the Mortgaged Property against such risks (including, without limitation, fire and extended coverage and collapse of the Improvements to agreed limits) as Mortgagee may request, in form and substance acceptable to Mortgagee or deemed sufficient by Mortgagee in order to protect its interests.

(v)      Such other insurance as may from time to time be reasonably required by Mortgagee in order to protect its interests.

(c)     All policies of insurance (the **"Policies"**) required pursuant to this paragraph: (i) shall be issued by companies approved by Mortgagee and licensed to do business in the state where the Mortgaged Property is located, with a claims paying ability rating of "BBB" or better by Standard & Poor's Ratings Services, a division of McGraw-Hill Companies, Inc. and a rating of "A:VII" or better in the current Best's Insurance Reports; (ii) shall name Mortgagee and its successors and/or assigns as their interest may appear as the mortgagee; (iii) shall contain a Non-Contributory Standard Mortgagee Clause and a Lender's Loss Payable Endorsement, or their equivalents, naming Mortgagee as the person to which all payments made by such insurance company shall be paid; (iv) shall contain a waiver of subrogation against Mortgagee; (v) shall be maintained throughout the Term without cost to Mortgagee; (vi) shall be assigned and the originals or certified copies delivered to Mortgagee (including certified copies of the Policies in effect on the date hereof within thirty (30) days after the closing of the Loan); (vii) shall contain such provisions as Mortgagee deems reasonably necessary or desirable to protect its interest including, without limitation, endorsements providing that neither Mortgagor, Mortgagee nor any other party shall be a co-insurer under said Policies and that Mortgagee shall receive at least thirty (30) days prior written notice of any modification, reduction or cancellation; and (viii) shall be satisfactory in form and substance to Mortgagee and shall be approved by Mortgagee in its reasonable discretion as to amounts, form, risk coverage, deductibles, loss payees and insureds. Mortgagor shall pay the premiums for such Policies (the **"Insurance Premiums"**) as the same become due and payable and shall furnish to Mortgagee evidence of the renewal of each of the Policies with receipts for the payment of the Insurance Premiums or other evidence of such payment reasonably satisfactory to Mortgagee (provided, however, that Mortgagor is not required to furnish such evidence of payment to Mortgagee in the event that such Insurance Premiums have been paid by Mortgagee pursuant to Paragraph 5 hereof). If Mortgagor does not furnish such evidence and receipts at least thirty (30) days prior to the expiration of any expiring Policy, then Mortgagee may procure, but shall not be obligated to procure, such insurance and pay the Insurance Premiums therefore, and Mortgagor agrees to reimburse Mortgagee for the cost of such Insurance Premiums promptly on demand.  Within

thirty (30) days after request by Mortgagee, Mortgagor shall obtain such increases in the amounts of coverage required hereunder as may be reasonably requested by Mortgagee, taking into consideration changes in the value of money over time, changes in liability laws, changes in prudent customs and practices, and the like.

(d)     If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (an **"Insured Casualty"**), Mortgagor shall give prompt notice thereof to Mortgagee. Following the occurrence of an Insured Casualty, Mortgagor, regardless of whether insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable law. The expenses incurred by Mortgagee in the adjustment and collection of insurance proceeds shall become part of the Debt and be secured hereby and shall be reimbursed by Mortgagor to Mortgagee upon demand.

(e)     In case of loss or damages covered by any of the Policies, the following provisions shall apply:

(i)     In the event of an Insured Casualty that does not exceed ten percent (10%) of the original principal amount of the Note, Mortgagor may settle and adjust any claim without the consent of Mortgagee and agree with the insurance company or companies on the amount to be paid upon the loss; provided that such adjustment is carried out in a competent and timely manner. In such case, Mortgagor is hereby authorized to collect and receipt for any such insurance proceeds.

(ii)     In the event an Insured Casualty shall exceed ten percent (10%) of the original principal amount of the Note, then and in that event, Mortgagee may settle and adjust any claim without the consent of Mortgagor and agree with the insurance company or companies on the amount to be paid on the loss and the proceeds of any such policy shall be due and payable solely to Mortgagee and held in escrow by Mortgagee in accordance with the terms of this Mortgage.

(iii)     In the event of an Insured Casualty where the loss is in an aggregate amount less than forty percent (40%) of the original principal balance of the Note, and if, in the reasonable judgment of Mortgagee, the Mortgaged Property can be restored within six (6) months and prior to maturity of the Note to an economic unit not less valuable (including an assessment of the impact of the termination of any Leases due to such Insured Casualty) and not less useful than the same was prior to the Insured Casualty, and after such restoration will adequately secure the outstanding balance of the Debt, then, if no Event of Default (as hereinafter defined) shall have occurred and be then continuing, the proceeds of insurance (after reimbursement of any expenses incurred by Mortgagee) shall be applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Mortgagor hereby covenants and agrees to commence and diligently to prosecute such restoring, repairing, replacing or rebuilding; provided always, that Mortgagor shall pay all costs (and if required by Mortgagee, Mortgagor shall deposit the total thereof with Mortgagee in advance) of such restoring, repairing, replacing

or rebuilding in excess of the net proceeds of insurance made available pursuant to the terms hereof.

(iv)     Except as provided above, the proceeds of insurance collected upon any Insured Casualty shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below.  Any such application to the Debt shall be without any Prepayment Premium, except that if an Event of Default has occurred and is continuing then the Mortgagor shall pay to Mortgagee an additional amount equal to the Prepayment Premium (as such term is defined in the Note), if any.  Any such application to the Debt shall (A) be applied to those payments of principal and interest last due under the Note but shall not postpone any payments otherwise required pursuant to the Note other than such last due payments and (B) cause the Note to be re-amortized in accordance with its terms and conditions.

(v)     In the event Mortgagor is entitled to reimbursement out of insurance proceeds held by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding, (2) funds or, at Mortgagee's option, assurances satisfactory to Mortgagee that such funds are available, sufficient in addition to the proceeds of insurance to complete the proposed restoration, repair, replacement and rebuilding, and (3) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Mortgagee may reasonably require and approve.  Mortgagee may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Mortgagee in its reasonable discretion prior to commencement of work.  No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than proceeds of insurance shall be disbursed prior to disbursement of such proceeds; and at all times, the undisbursed balance of such proceeds remaining in the hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien.  Any surplus which may remain out of insurance proceeds held by Mortgagee after payment of such costs of restoration, repair, replacement or rebuilding shall be paid to any party entitled thereto.

(f)     In the event of any conflict, inconsistency or ambiguity between the provisions of this Paragraph 3 and the provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire, the provisions of Paragraph 3 hereof shall control.

**4.     Payment of Taxes, Etc.**     Mortgagor shall pay all taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the **"Taxes"**) and all ground rents, maintenance

charges, other impositions, and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the **"Other Charges"**) as the same become due and payable. Mortgagor will deliver to Mortgagee receipts for payment or other evidence satisfactory to Mortgagee that the Taxes and Other Charges have been so paid or are not then delinquent no later than thirty (30) days prior to the date on which the Taxes and/or Other Charges would otherwise be delinquent if not paid. Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility services provided to the Mortgaged Property. Mortgagor shall furnish to Mortgagee receipts for the payment of the Taxes and the Other Charges prior to the date the same shall become delinquent (provided, however, that Mortgagor is not required to furnish such receipts for payment of Taxes in the event that such Taxes have been paid by Mortgagee pursuant to Paragraph 5 hereof).

     **5.**    **Tax and Insurance Escrow Fund.**  Mortgagor shall pay to Mortgagee on the first (1st) day of each calendar month one-twelfth of the Taxes that Mortgagee estimates will be payable during the next ensuing twelve (12) months in order to accumulate with Mortgagee sufficient funds to pay all such Taxes at least thirty (30) days prior to their respective due dates, and (b) 110% of one-twelfth of the Insurance Premiums that Mortgagee estimates will be payable for the renewal of the coverage afforded by the Policies upon the expiration thereof in order to accumulate with Mortgagee sufficient funds to pay all such Insurance Premiums at least thirty (30) days prior to the expiration of the Policies (said amounts in (a) and (b) above hereinafter called the **"Tax and Insurance Escrow Fund"**). The Tax and Insurance Escrow Fund and the payments of interest or principal or both, payable pursuant to the Note, shall be added together and shall be paid as an aggregate sum by Mortgagor to Mortgagee. Mortgagor hereby pledges to Mortgagee and grants to Mortgagee a security interest in any and all monies now or hereafter deposited in the Tax and Insurance Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Tax and Insurance Escrow Fund in a timely fashion to payments of Taxes and Insurance Premiums required to be made by Mortgagor pursuant to Paragraphs 3 and 4 hereof. In making any payment relating to the Tax and Insurance Escrow Fund, Mortgagee may do so according to any bill, statement or estimate procured from the appropriate public office (with respect to Taxes) or Mortgagor's insurer or agent (with respect to Insurance Premiums), without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof. If the amount of the Tax and Insurance Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Paragraphs 3 and 4 hereof, Mortgagee shall, in its sole discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Tax and Insurance Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If at any time Mortgagee determines that the Tax and Insurance Escrow Fund is not or will not be sufficient to pay the items set forth in (a) and (b) above, Mortgagee shall notify Mortgagor of such determination and Mortgagor shall increase its monthly payments to Mortgagee by the amount that Mortgagee estimates is sufficient to make up the deficiency at least thirty (30) days prior to delinquency of the Taxes and/or expiration of the Policies, as the case may be. Upon the occurrence of an Event of Default, Mortgagee may apply any sums then present in the Tax and

Insurance Escrow Fund to the payment of the Debt in any order in its sole discretion. Until expended or applied as above provided, any amounts in the Tax and Insurance Escrow Fund shall constitute additional security for the Debt. The Tax and Insurance Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee. The Tax and Insurance Escrow Fund may at Mortgagee's sole option  be held in an interest bearing account in Mortgagee's name at a financial institution selected by Mortgagee in its sole discretion. All earnings or interest on the Tax and Insurance Escrow Fund, if any, shall be and become part of such Tax and Insurance Escrow Fund and shall be disbursed as provided in this Paragraph 5. If Mortgagee so elects at any time, Mortgagor shall provide, at Mortgagor's expense, a tax service contract for the Term issued by a tax reporting agency acceptable to Mortgagee. If Mortgagee does not so elect, Mortgagor shall reimburse Mortgagee for the cost of making annual tax searches throughout the Term. The Mortgagor and Mortgagee covenant and agree that provided the Mortgagor is not in default under the Note, this Mortgage or any other Loan Documents, and provided further that Mortgagor furnishes Mortgagee with proof that all Taxes and Other Charges are being paid as required under this Mortgage, Mortgagee shall not require Mortgagor to make monthly installments for the payment of Taxes and Other Charges to the Tax Escrow Fund.

      **6.**    **Condemnation.**    Mortgagor shall promptly give Mortgagee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding (a **"Condemnation"**) and shall deliver to Mortgagee copies of any and all papers served in connection with such Condemnation. Following the occurrence of a Condemnation, Mortgagor, regardless of whether an Award (hereinafter defined) is available, shall promptly proceed to restore, repair, replace or rebuild the same to the extent practicable to be of at least equal value and of substantially the same character as prior to such Condemnation, all to be effected in accordance with applicable law.

      (a)    Mortgagee is hereby irrevocably appointed as Mortgagor's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any award or payment (**"Award"**) for any taking accomplished through a Condemnation (a **"Taking"**) and to make any compromise or settlement in connection with such Condemnation, subject to the provisions of this Mortgage. Notwithstanding any Taking by any public or quasi-public authority (including, without limitation, any transfer made in lieu of or in anticipation of such a Taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for in the Note, in this Mortgage and the other Loan Documents and the Debt shall not be reduced unless and until any Award shall have been actually received and applied by Mortgagee to expenses of collecting the Award and to discharge of the Debt. Mortgagee shall not be limited to the interest paid on the Award by the condemning authority but shall be entitled to receive out of the Award interest at the rate or rates provided in the Note. Mortgagor shall cause any Award that is payable to Mortgagor to be paid directly to Mortgagee.

      (b)    In the event of any Condemnation where the Award is in an aggregate amount less than twenty-five percent (25%) of the original principal balance of the Note, and if, in the reasonable judgment of Mortgagee, the Mortgaged Property can be restored within six (6) months and prior to maturity of the Note to an economic unit not less valuable (including an assessment of the impact of the termination of any Leases due to such

Condemnation) and not less useful than the same was prior to the Condemnation, and after such restoration will adequately secure the outstanding balance of the Debt, then, if no Event of Default shall have occurred and be then continuing, the proceeds of the Award (after reimbursement of any expenses incurred by Mortgagee) shall be applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to Condemnation, in the manner set forth below.  Mortgagor hereby covenants and agrees to commence and diligently to prosecute such restoring, repairing, replacing or rebuilding; provided always, that Mortgagor shall pay all costs (and if required by Mortgagee, Mortgagor shall deposit the total thereof with Mortgagee in advance) of such restoring, repairing, replacing or rebuilding in excess of the Award to be made available pursuant to the terms hereof.

(c)     Except as provided above, the Award collected upon any Condemnation shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Condemnation, in the manner set forth below. Any such application to the Debt shall be without any Prepayment Premium except that if an Event of Default has occurred and is continuing then the Mortgagor shall pay to Mortgagee an additional amount equal to the Prepayment Premium, if any.  Any such application to the Debt shall (i) be applied to those payments of principal and interest last due under the Note but shall not postpone or reduce any payments otherwise required pursuant to the Note other than such last due payments and (ii) cause the Note to be re-amortized in accordance with its terms and conditions.  If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such Award, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall be recoverable or shall have been sought, recovered or denied, to receive all or a portion of said Award sufficient to pay the Debt.

(d)     In the event Mortgagor is entitled to reimbursement out of the Award received by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence reasonably satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding resulting from such condemnation, (2) finds or, at Mortgagee's option, receives assurances reasonably satisfactory to Mortgagee that such funds are available, sufficient in addition to the proceeds of the Award to complete the proposed restoration, repair, replacement and rebuilding, and (3) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of costs, payment and performance as Mortgagee may reasonably require and approve; and Mortgagee may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Mortgagee prior to commencement of work.  No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than proceeds of the Award shall be disbursed prior to disbursement of such proceeds; and at all times, the undisbursed balance of such proceeds remaining in hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the costs of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien.  Any surplus which may remain out of

the Award received by Mortgagee after payment of such costs of restoration, repair, replacement or rebuilding shall, in the sole and absolute discretion of Mortgagee, be retained by Mortgagee and applied to payment of the Debt provided that such application to the Debt shall be without any Prepayment Premium as long as no Event of Default has occurred and is continuing.

### 7.   Leases and Rents.

(a)     Mortgagor does hereby absolutely and unconditionally assign to Mortgagee, all of Mortgagor's right, title and interest in all current and future Leases and Rents, it being intended by Mortgagor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Mortgagee shall not be construed to bind Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Mortgagee. Mortgagor agrees to execute and deliver to Mortgagee such additional instruments, in form and substance satisfactory to Mortgagee, as may hereafter be requested by Mortgagee to further evidence and confirm such assignment. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof, sufficient to discharge all current sums due on the Debt, in trust for the benefit of Mortgagee for use in the payment of such sums. Upon an Event of Default, without the need for notice or demand, the license granted to Mortgagor herein shall automatically be revoked, and Mortgagee shall immediately be entitled to possession of all Rents, whether or not Mortgagee enters upon or takes control of the Mortgaged Property.   Mortgagee is hereby granted and assigned by Mortgagor the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license may be applied toward payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper.

(b)     All residential leases shall be written on the standard form of residential lease which has been approved by Mortgagee and all commercial leases shall be written on the standard form of commercial lease which has been approved by Mortgagee. No material changes may be made to the Mortgagee-approved standard residential or commercial lease except for customary alterations made in the ordinary course of business. All Leases shall provide that they are subordinate to this Mortgage and that the tenant agrees to attorn to Mortgagee. All renewals of residential leases and all proposed residential leases shall provide for rental rates comparable to existing local market rates and shall be arms length transactions. None of the commercial leases shall contain any non-disturbance or similar recognition agreement, any requirement that the Mortgagor rebuild the Mortgaged Property in connection with a casualty or condemnation of any portion of the Mortgaged Property, or any other similar provisions which adversely affect the Mortgaged Property or which might adversely affect the rights of any holder of the Loan without the prior written consent of Mortgagee. Upon request, Mortgagor shall furnish Mortgagee with executed copies of all residential and commercial leases.

(c)     Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notices of default which can lead to an offset of Rents or termination of the applicable Lease that Mortgagor shall send or receive thereunder; (iii) shall enforce all the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; (vi) shall use its best efforts to deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial tenant at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee, provided that Mortgagor shall not be required to deliver such certificates more frequently than four (4) times in any calendar year; and (vii) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require. Except to the extent Mortgagor is acting in the ordinary course of business as a prudent operator of property similar to the Mortgaged Property, Mortgagor (A) shall not, alter, modify or change the terms of the Leases in any material respect without the prior written consent of Mortgagee, such consent not to be unreasonably withheld or delayed; (B) shall not convey or transfer or suffer or permit a conveyance or transfer of the Mortgaged Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, tenants under the Leases; (C) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (D) shall not cancel or terminate the Leases or accept a surrender thereof, except if a tenant is in default thereunder; provided, however, that any Lease may be cancelled if at the time of the cancellation thereof a new Lease is entered into on substantially the same terms or more favorable terms as the cancelled Lease.

(d)     Mortgagor may enter into proposed new commercial leases and proposed renewals or extensions of existing commercial leases without the prior written consent of Mortgagee if such proposed commercial leases or extension: (i) is not for greater than or equal to ten percent (10%) of the gross leaseable area of the Mortgaged Property, or greater than or equal to ten percent (10%) of the total gross rental revenues of the Mortgaged Property; (ii) shall have an initial term of not less than three (3) years or greater than ten (10) years; (iii) shall provide for rental rates comparable to existing local market rates and shall be an arms length transaction; (iv) shall not contain any options for renewal or expansion by the tenant thereunder at rental rates which are either below comparable market levels or less than the rental rates paid by the tenant during the initial lease term; (v) shall be to a tenant which is experienced, creditworthy and reputable; and (vi) shall comply with the requirements of subparagraph (b), above. Mortgagor may enter into a proposed lease which does not satisfy all of the conditions set forth in clauses (i) through (vi) immediately above only with the prior written consent of Mortgagee, such consent not to be unreasonably withheld or delayed.   Mortgagor expressly understands that any and all new or proposed commercial leases are included in the definition of "Lease" or "Leases" as such terms may be used throughout this Mortgage and the other Loan Documents.

(e)     All security deposits of tenants, whether held in cash or any other form, shall not be commingled with any other funds of Mortgagor and, if cash, shall be deposited by Mortgagor at such commercial or savings bank or banks as may be reasonably satisfactory to Mortgagee. Any bond or other instrument which Mortgagor is permitted to hold in lieu of cash security deposits under any applicable legal requirements shall be maintained in full force and effect in the full amount of such deposits unless replaced by cash deposits as hereinabove described, shall be issued by an institution reasonably satisfactory to Mortgagee, shall, if permitted pursuant to any legal requirements, name Mortgagee as payee or mortgagee thereunder (or at Mortgagee's option, be fully assignable to Mortgagee) and shall, in all respects, comply with any applicable legal requirements and otherwise be reasonably satisfactory to Mortgagee. Mortgagor shall, upon request, provide Mortgagee with evidence reasonably satisfactory to Mortgagee of Mortgagor's compliance with the foregoing. Following the occurrence and during the continuance of any Event of Default, Mortgagor shall, upon Mortgagee's request, if permitted by any applicable legal requirements, turn over to Mortgagee the security deposits (and any interest theretofore earned thereon) with respect to all or any portion of the Mortgaged Property, to be held by Mortgagee subject to the terms of the Leases.

8.     **Representations and Covenants Concerning the Loan.** Mortgagor represents, warrants and covenants as follows:

(a)     The Note, this Mortgage and the other Loan Documents are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor would the operation of any of the terms of the Note, this Mortgage and the other Loan Documents, or the exercise of any right thereunder, render this Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury.

(b)     All certifications, permits, licenses and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Mortgaged Property have been obtained and are in full force and effect. The Mortgaged Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Mortgaged Property.   The Mortgagor shall comply with all of the recommendations concerning the maintenance and repair of the Mortgaged Property which are contained in the inspection and engineering report which was delivered to Mortgagee in connection with the origination of the Loan.

(c)     All of the Improvements which were included in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Mortgaged Property except those which are insured against by title insurance. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

(d)     The Mortgaged Property is not subject to any Leases other than the Leases described in the rent roll delivered to Mortgagee in connection with this Mortgage. No person has any possessory interest in the Mortgaged Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are in full force and effect and there are no defaults thereunder by either party and there are no conditions that, with the passage of time or the giving of notice, or both, would constitute defaults thereunder.

(e)     The survey of the Mortgaged Property delivered to Mortgagee in connection with this Mortgage, has been performed by a duly licensed surveyor or registered professional engineer in the jurisdiction in which the Mortgaged Property is situated, is certified to the Mortgagee, its successors and assigns, and the title insurance company, and is in accordance with the most current minimum standards for title surveys as determined by the American Land Title Association, with the signature and seal of a licensed engineer or surveyor affixed thereto, and does not fail to reflect any material matter affecting the Mortgaged Property or the title thereto.

(f)     The Mortgaged Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or hereafter relating to the ownership, construction, use or operation of the Mortgaged Property.

(g)     Mortgagor operates the Mortgaged Property and has not entered into any agreement with any third party relating to the operation and management of the Mortgaged Property, and no third party is entitled to any management fee or any portion of the Rents.

**9.     Trust Fund.** Pursuant to Section 13 of the lien law of New York, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

**10.     Maintenance of Mortgaged Property.** Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair. The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the consent of Mortgagee. Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof subject to the applicable provisions of this Mortgage. Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property that is destroyed by any casualty, or becomes damaged, worn or dilapidated or that is affected by any proceeding of the character referred to in Paragraph 6 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises. Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit

such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee. Mortgagor shall not (i) change the use of the Mortgaged Property, (ii) permit or suffer to occur any waste on or to the Mortgaged Property or to any portion thereof or (iii) take any steps whatsoever to convert the Mortgaged Property, or any portion thereof, to a condominium or cooperative form of management. Mortgagor will not install or permit to be installed on the Premises any underground storage tank.

## 11.    Transfer or Encumbrance of the Mortgaged Property.

(a)    Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the Loan, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt.  Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property.  Mortgagor shall not, without the prior written consent of Mortgagee, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b)    A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Paragraph 11 shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, Guarantor, or any general partner of Mortgagor or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or the stock of any corporation directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders or any change in the control of such corporation; (iv) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership, joint venture or limited liability company, the change, removal, resignation or addition of a general partner, managing partner, limited partner, joint venturer or member or the transfer of the partnership interest of any general partner, managing partner or limited partner or the transfer of the interest of any joint venturer or member; and (v) any pledge, hypothecation, assignment, transfer or other encumbrance of any ownership interest in Mortgagor.

(c)    Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof without Mortgagee's consent. This provision shall apply to every sale, conveyance, alienation, mortgage,

encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

(d)     Mortgagee's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof shall not be deemed to be a waiver of Mortgagee's right to require such consent to any future occurrence of same.   Any sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof made in contravention of this paragraph shall be null and void and of no force and effect.

(e)     Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including, without limitation, reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Mortgagee in connection with the review, approval and documentation of any such sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer.

12.     **Estoppel Certificates and No Default Affidavits.**

(a)     After request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note, this Mortgage and the other Loan Documents are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

(b)     After request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a certificate reaffirming all representations and warranties of Mortgagor set forth herein and in the other Loan Documents as of the date requested by Mortgagee or, to the extent of any changes to any such representations and warranties, so stating such changes.

13.     **Changes in Laws Regarding Taxation.**     If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any.   In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable, provided that Mortgagor shall not be required to pay any Prepayment Premium  in connection herewith unless an Event of Default has occurred and is continuing.

14.     **Documentary Stamps.**     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be

affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

15. **Controlling Agreement.**     It is expressly stipulated and agreed to be the intent of Mortgagor, and Mortgagee at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Mortgagee to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Paragraph 15 shall control every other covenant and agreement in this Mortgage and the other Loan Documents. If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under the Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Debt, or if Mortgagee's exercise of the option to accelerate the maturity of the Note, or if any prepayment by Mortgagor results in Mortgagor having paid any interest in excess of that permitted by applicable law, then it is Mortgagor's and Mortgagee's express intent that all excess amounts theretofore collected by Mortgagee shall be credited on the principal balance of the Note and all other Debt, and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Mortgagee for the use, forbearance, or detention of the Debt shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Debt until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Mortgagee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

16. **Financial Statements.**    The financial statements heretofore furnished to Mortgagee are, as of the dates specified therein, complete and correct and fairly present the financial condition of the Mortgagor and any other persons or entities that are the subject of such financial statements, and are prepared in accordance with generally accepted accounting principles. Mortgagor does not have any liabilities for taxes, unusual forward or long-term commitments or unrealized or anticipated losses from any unfavorable commitments that are known to Mortgagor and reasonably likely to have a materially adverse effect on the Mortgaged Property or the operation thereof, except as referred to or reflected in said financial statements. Since the date of such financial statements, there has been no materially adverse change in the financial condition, operation or business of Mortgagor from that set forth in said financial statements. Mortgagor will maintain full and accurate books of accounts and other records reflecting the results of the operations of the Mortgaged Property and will furnish to Mortgagee on or before forty-five (45) days after the end of each calendar quarter the following items, each certified by Mortgagor as being true and correct: (i) a written statement (rent roll) dated as of the last day of each such calendar quarter identifying each of the Leases by the term, space occupied, rental required to be paid, security deposit paid, any rental concessions, and identifying any material defaults or payment delinquencies thereunder; and (ii) monthly and year to date operating statements prepared for each calendar month during each such calendar quarter, each

of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period.  Within ninety (90) days following the end of each calendar year, Mortgagor shall furnish statements of its financial affairs and condition including a balance sheet and a statement of profit and loss for the Mortgagor in such detail as Mortgagee may reasonably request, and setting forth the financial condition and the income and expenses for the Mortgaged Property for the immediately preceding calendar year.  Mortgagor's annual financial statements shall be accompanied by a certificate executed by the chief financial officer of Mortgagor or the general partner of Mortgagor, as applicable, stating that each such annual financial statement presents fairly the financial condition of the Mortgaged Property being reported upon and has been prepared in accordance with good and sound accounting principles consistently applied. Mortgagor's annual financial statements shall include (i) a list of commercial tenants, if any, occupying more than twenty (20%) percent of the total floor area of the Improvements, and (ii) a breakdown showing the year in which each commercial lease then in effect expires and the percentage of total floor area of the Improvements and the percentage of base rent with respect to which commercial leases shall expire in each such year, each such percentage to be expressed on both a per year and a cumulative basis.  At any time and from time to time Mortgagor shall deliver to Mortgagee or its agents such other financial data as Mortgagee or its agents shall reasonably request with respect to the ownership, maintenance, use and operation of the Mortgaged Property.  In the event Mortgagor or any Guarantor fails to provide the financial documents required to be delivered pursuant to this Mortgage, the Guaranty or any of the other loan documents within the time periods set forth in this Mortgage, the Guaranty or any of the other loan documents and such failure continues for thirty (30) days following written demand from Mortgagee, the interest rate under the Note shall be increased by five (5%) percent and such increase shall remain in effect until such time as Mortgagor or Guarantor deliver all of the required financial documents

        17.   **Performance of Other Agreements.**   Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

        18.   **Further Acts, Etc.**  Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage or for facilitating the sale of the Loan and the Loan Documents (if Mortgage elects to do so. )  Mortgagor, on demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Upon foreclosure, the appointment of a receiver or any other relevant action, Mortgagor will, at the cost of Mortgagor and without

expense to Mortgagee, cooperate fully and completely to effect the assignment or transfer of any license, permit, agreement or any other right necessary or useful to the operation of the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including, without limitation, such rights and remedies available to Mortgagee pursuant to this paragraph.

19. **Recording of Mortgage, Etc.** Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

20. **Reporting Requirements.** Mortgagor agrees to give prompt notice to Mortgagee of the insolvency or bankruptcy filing of Mortgagor or the death, insolvency or bankruptcy filing of any Guarantor.

21. **Events of Default.** The Debt shall become immediately due and payable at the option of Mortgagee upon the happening of any one or more of the following events of default (each an **"Event of Default"**):

(a)     if any portion of the Debt is not paid when due;

(b)     subject to Mortgagor's right to contest as provided herein, if any of the Taxes or Other Charges are not paid when the same are due and payable in accordance with Paragraph 4 and Paragraph 5 of this Mortgage;

(c)     if the Policies are not kept in full force and effect or are not delivered to Mortgagee upon request and in accordance with the requirements contained in this Mortgage;

(d)     if Mortgagor transfers or encumbers any portion of the Mortgaged Property without Mortgagee's prior written consent , it being expressly agreed and acknowledged by Mortgagor that subordinate financing is prohibited by this Mortgage;

(e)      if any material representation or warranty of Mortgagor, or of any Guarantor, made herein or in any other Loan Document or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

(f)      if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as they become due;

(g)      if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days:

(h)      if Mortgagor shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property whether it be superior or junior in lien to this Mortgage;

(i)      subject to Mortgagor's rights set forth in Paragraph 21 of this Mortgage, if the Mortgaged Property becomes subject to any mechanic's, materialman's or other lien in excess of $10,000.00 except a lien for local real estate taxes and assessments not then due and payable;

(j)      if Mortgagor fails to cure properly any (i) building department violations, or (ii) rent impairing violations affecting or which may be interpreted to affect the Mortgaged Property and which have or may have a negative adverse impact on Rents in the sole judgment of Mortgagee within thirty (30) days after Mortgagor first receives notice of any such violations;

(k)      except as permitted in this Mortgage, the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Mortgagee;

(l)      if Mortgagor shall continue to be in default under any term, covenant, or provision of the Note or any of the other Loan Documents, beyond applicable cure periods contained in those documents;

(m)      if Mortgagor fails to cure a default under any other term, covenant or provision of this Mortgage within thirty (30) days after Mortgagor first receives notice of any such default; provided, however, if such default is reasonably susceptible of cure, but not within such thirty (30) day period, then Mortgagor may be permitted up to an additional sixty (60) days to cure such default provided that Mortgagor diligently and continuously pursues such cure, however notwithstanding anything to the contrary the Mortgagee shall not be required to provide

notice to Mortgagor for the Events of Default set forth in Section 21(a) – (l) and Section 21(n)-(p) herein;

        (n)     if, without Mortgagee's prior written consent, such consent not to be unreasonably withheld or delayed, (i) Mortgagor ceases to act as the manager of the Mortgaged Property, (ii) Mortgagor shall enter into a management agreement with any party or there is any material change in any management agreement approved by Mortgagee, (iii) the management of the Mortgaged Property is transferred to a person or entity other than Mortgagor, or (iv) there is any material change in the management, operation or control of the Mortgaged Property;

        (o)     if Mortgagor ceases to continuously operate the Mortgaged Property or any material portion thereof for any reason whatsoever or if Mortgagor fails to timely and promptly renovate the Mortgaged Property (other than temporary cessation in connection with any repair or renovation thereof undertaken with the consent of Mortgagee); or

        (p)     the death of any Guarantor or a material adverse financial change of any Guarantor.

22.    **Late Payment Charge and Default Rate.**

        (a)     If any portion of the Debt is not paid within ten (10) days of the date such payment is due and payable, Mortgagor shall pay to Mortgagee upon demand an amount equal to five percent (5%) of such unpaid portion of the Debt in order to defray a portion of the expenses incurred by Mortgagee in handling and processing such delinquent payment and to compensate Mortgagee for the loss of the use of such delinquent payment, and such amount shall be deemed to be secured by this Mortgage.

        (b)     From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Mortgagee, interest shall accrue on the outstanding Principal Sum at a rate equal to lesser of (i) twenty-four percent (24%) per annum, or (ii) the maximum rate allowed by law (the "**Default Rate**"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the Debt. The Default Rate shall be in effect at all times after the maturity of the Debt (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under the Note, the Mortgage and the Loan Documents shall have been paid in full. **THE MORTGAGOR SPECIFICALLY ACKNOWLEDGES AND AGREES THAT THE DEFAULT INTEREST RATE REFERRED TO IN THE NOTE, THIS SECURITY INSTRUMENT AND THE OTHER SECURITY DOCUMENTS AND AS CONTRACTED BY THE PARTIES SHALL SURVIVE THE ENTRY OF ANY MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE, AS APPLICABLE. THE DEFAULT INTEREST RATE SHALL BE IMPOSED AND CONTINUE TO ACCRUE UNTIL SUCH TIME AS ANY MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE ENTERED IN CONNECTION WITH THE UNDERLYING DEBT HAS BEEN PAID AND SATISFIED IN FULL. AS SUCH, THE STATUTORY JUDGMENT INTEREST RATE SET FORTH IN CPLR SECTION 5004 IS NOT APPLICABLE; RATHER, THE DEFAULT RATE OF INTEREST SET FORTH HEREIN SHALL REMAIN IN EFFECT AND BE IMPOSED SUBSEQUENT TO THE ENTRY OF ANY MONETARY JUDGMENT AND/OR**

**JUDGMENT OF FORECLOSURE. MORTGAGOR FURTHER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT THE APPLICABILITY OF THE DEFAULT INTEREST RATE PURSUANT TO THE NOTE, THIS SECURITY INSTRUMENT AND THE OTHER SECURITY DOCUMENTS AND AS CONTRACTED BY THE PARTIES, SUBSEQUENT TO THE ENTRY OF ANY MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE, IS A DIRECT INDUCEMENT AND CONSIDERATION FOR THE MORTGAGEE ENTERING INTO THE TRANSACTION EVIDENCED BY THE NOTE. MORTGAGOR HAS KNOWINGLY WAIVED THE APPLICABILITY OF THE STATUTORY JUDGMENT RATE SET FORTH IN CPLR SECTION 5004 OR ANY OTHER RELEVANT CIVIL STATUTE OF THE STATE OF NEW YORK OR ANY OTHER STATE, SUBSEQUENT TO THE ENTRY OF A MONETARY JUDGMENT AND/OR JUDGMENT OF FORECLOSURE.**

23.     **Right To Cure Defaults.**   Upon the occurrence of any Event of Default or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest at the Default Rate (as defined in the Note) for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee, shall constitute a portion of the Debt, shall be secured by this Mortgage and the other Loan Documents and shall be due and payable to Mortgagee upon demand.

24.     **Remedies**

(a)     Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property by Mortgagee itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(i)      declare the entire Debt to be immediately due and payable;

(ii)     institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Mortgage in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner; notwithstanding the foregoing, upon default of the Mortgage or the Note, or other obligation secured thereby, Mortgagee shall have the right to sell the Premises by power of sale pursuant to Article 14 of the New York Real Property Actions and Proceedings Law.

(iii) with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv) sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, or in any of the other Loan Documents;

(vi) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage;

(vii) apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii) enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Mortgaged Property to the payment of Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in

connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees; or

(ix)    pursue such other rights and remedies as may be available at law or in equity or under the Uniform Commercial Code.

In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(b)    The proceeds of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this paragraph or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall deem proper.

(c)    Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)    Upon the completion of any sale or sales pursuant hereto in accordance with all applicable laws, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this paragraph, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(e)    Upon any sale made under or by virtue of this paragraph, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage and the other Loan Documents.

(f)    No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee

hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(g)     Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this paragraph at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(h)     Mortgagee may resort to any remedies and the security given by the Note, this Mortgage or in any of the other Loan Documents in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion.  No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the Note, this Mortgage or in any of the other Loan Documents.  The failure of Mortgagee to exercise any right, remedy or option provided in the Note, this Mortgage or any of the other Loan Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Mortgage or any of the other Loan Documents. No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment by Mortgagee of any obligation for which Mortgagor is liable hereunder shall be deemed to waive or cure any Event of Default with respect to Mortgagor, or Mortgagor's liability to pay such obligation.  No sale of all or any portion of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee to Mortgagor, shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability of Mortgagor to pay the Debt.  No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated.  All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 24 (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(i)     The interests and rights of Mortgagee under the Note, this Mortgage or any of the other Loan Documents shall not be impaired by any indulgence, including, without limitation, (i) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion thereof; or (iii) any release or indulgence granted to any maker, endorser, Guarantor or surety of any of the Debt.

25.     **Right of Entry**.     In addition to any other rights or remedies granted under this Mortgage, Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property with 24 hours notice at any reasonable time during the Term.  The cost of such inspections or audits shall be borne by Mortgagor should Mortgagee determine that an Event of Default exists, including the cost of all follow up or additional investigations or inquiries deemed reasonably necessary by Mortgagee.  The cost of such inspections, if not paid

for by Mortgagor following demand, may be added to the principal balance of the sums due under the Note and this Mortgage and shall bear interest thereafter until paid at the Default Rate.

26.   **Security Agreement.**   This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor by executing and delivering this Mortgage has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this paragraph the **"Collateral"**). Mortgagor hereby agrees with Mortgagee to execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements and such further assurances as Mortgagee may from time to time, reasonably consider necessary to create, perfect, and preserve Mortgagee's security interest herein granted. This Mortgage shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code. As such, this Mortgage covers all items of the Collateral that are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper. In the event of any change in name, identity or structure of any Mortgagor, such Mortgagor shall notify Mortgagee thereof and promptly after request shall execute, file and record such Uniform Commercial Code forms as are necessary to maintain the priority of Mortgagee's lien upon and security interest in the Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall require the filing or recording of additional Uniform Commercial Code forms or continuation statements, Mortgagor shall, promptly after request, execute, file and record such Uniform Commercial Code forms or continuation statements as Mortgagee shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Note, this Mortgage and the other Loan Documents. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its

behalf any financing or other statements signed only by Mortgagee, as secured party, in connection with the Collateral covered by this Mortgage.

27. **Actions and Proceedings.** Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its sole discretion, decides should be brought to protect their interest in the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

28. **Contest of Certain Claims.** Notwithstanding the provisions of Paragraphs 4 hereof, but subject in any event to the provisions of Paragraph 5 hereof, Mortgagor shall not be in default for failure to pay or discharge Taxes, Other Charges or mechanic's or materialman's lien asserted against the Mortgaged Property if, and so long as, (a) Mortgagor shall have notified Mortgagee of same within ten (10) days of obtaining knowledge thereof; (b) Mortgagor shall diligently and in good faith contest the same by appropriate legal proceedings which shall operate to prevent the enforcement or collection of the same and the sale of the Mortgaged Property or any part thereof, to satisfy the same; (c) Mortgagor shall have furnished to Mortgagee a cash deposit, or an indemnity bond satisfactory to Mortgagee with a surety satisfactory to Mortgagee, in the amount of the Taxes, Other Charges or mechanic's or materialman's lien claim, plus a reasonable additional sum to pay all costs, interest and penalties that may be imposed or incurred in connection therewith, to assure payment of the matters under contest and to prevent any sale or forfeiture of the Mortgaged Property or any part thereof; (d) Mortgagor shall promptly upon final determination thereof pay the amount of any such Taxes, Other Charges or claim so determined, together with all costs, interest and penalties which may be payable in connection therewith; (e) the failure to pay the Taxes, Other Charges or mechanic's or materialman's lien claim does not constitute a default under any other deed of trust, mortgage or security interest covering or affecting any part of the Mortgaged Property; and (f) notwithstanding the foregoing, Mortgagor shall immediately upon request of Mortgagee pay (and if Mortgagor shall fail so to do, Mortgagee may, but shall not be required to, pay or cause to be discharged or bonded against) any such Taxes, Other Charges or claim notwithstanding such contest, if in the opinion of Mortgagee, the Mortgaged Property or any part thereof or interest therein may be in danger of being sold, forfeited, foreclosed, terminated, cancelled or lost. Mortgagee may pay over any such cash deposit or part thereof to the claimant entitled thereto at any time when, in the judgment of Mortgagee, the entitlement of such claimant is established.

29. **Recovery of Sums Required to be Paid.** Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

30. **Marshalling and Other Matters.** Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement

and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

        31.    **Hazardous Substances.**  Mortgagor hereby represents and warrants to Mortgagee that, to the best of Mortgagor's knowledge: (a) the Mortgaged Property is not in direct or indirect violation of any local, state, federal or other governmental authority, statute, ordinance, code, order, decree, law, rule or regulation pertaining to or imposing liability or standards of conduct concerning environmental regulation, contamination or clean-up including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, as amended (**"CERCLA"**), the Resource Conservation and Recovery Act, as amended (**"RCRA"**), the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Hazardous Substances Transportation Act, as amended, the Solid Waste Disposal Act, as amended, the Clean Water Act, as amended, the Clean Air Act, as amended, the Toxic Substance Control Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, any state super-lien and environmental clean-up statutes and all regulations adopted in respect to the foregoing laws (collectively, **"Environmental Laws"**); (b) the Mortgaged Property is not subject to any private or governmental lien or judicial or administrative notice or action or inquiry, investigation or claim relating to hazardous and/or toxic, dangerous and/or regulated, substances, wastes, materials, raw materials which include hazardous constituents, pollutants or contaminants including without limitation, petroleum, tremolite, anthlophylie, actinolite or polychlorinated biphenyls and any other substances or materials which are included under or regulated by Environmental Laws or which are considered by scientific opinion to be otherwise dangerous in terms of the health, safety and welfare of humans (collectively, **"Hazardous Substances"**); (c) no Hazardous Substances are or have been (including the period prior to Mortgagor's acquisition of the Mortgaged Property), discharged, generated, treated, disposed of or stored on, incorporated in, or removed or transported from the Mortgaged Property other than in compliance with all Environmental Laws; (d) no Hazardous Substances are present in, on or under any nearby real property which could migrate to or otherwise affect the Mortgaged Property; and (e) no underground storage tanks exist on any of the Mortgaged Property. So long as Mortgagor owns or is in possession of the Mortgaged Property, Mortgagor (i) shall keep or cause the Mortgaged Property to be kept free from Hazardous Substances and in compliance with all Environmental Laws, (ii) shall promptly notify Mortgagee if Mortgagor shall become aware of any Hazardous Substances on or near the Mortgaged Property and/or if Mortgagor shall become aware that the Mortgaged Property is in direct or indirect violation of any Environmental Laws and/or if Mortgagor shall become aware of any condition on or near the Mortgaged Property which shall pose a threat to the health, safety or welfare of humans, (iii) shall remove such Hazardous Substances and/or cure such violations and/or remove such threats, as applicable, as required by law (or as shall be required by Mortgagee in the case of removal which is not required by law, but in response to the opinion of a licensed hydrogeologist, licensed environmental engineer or other qualified consultant engaged by Mortgagee (**"Mortgagee's Consultant"**), promptly after Mortgagor becomes aware of same, at Mortgagor's sole expense and (iv) shall comply with all of the recommendations contained in

the environmental report which was delivered to Mortgagee in connection with the origination of the Loan. Nothing herein shall prevent Mortgagor from recovering such expenses from any other party that may be liable for such removal or cure. The obligations and liabilities of Mortgagor under this Paragraph 31 shall survive any termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including, without limitation, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

32.     **Asbestos.**     Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, no asbestos or any substance or material containing asbestos (**"Asbestos"**) is located on the Mortgaged Property. Mortgagor shall not install in the Mortgaged Property, nor permit to be installed in the Mortgaged Property, Asbestos and shall remove any Asbestos promptly upon discovery to the satisfaction of Mortgagee, at Mortgagor's sole expense. Mortgagor shall in all instances comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. In the event that Mortgagor receives any notice or advice from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property, Mortgagor shall immediately notify Mortgagee. The obligations and liabilities of Mortgagor under this Paragraph 32 shall survive any termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

33.     **Environmental Monitoring.**     Mortgagor shall give prompt written notices to Mortgagee of: (a) any proceeding or inquiry by any party with respect to the presence of any Hazardous Substance or Asbestos on, under, from or about the Mortgaged Property, (b) all claims made or threatened by any third party against Mortgagor or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance or Asbestos, and (c) Mortgagor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause the Mortgaged Property to be subject to any investigation or cleanup pursuant to any Environmental Law. Mortgagor shall permit Mortgagee to join and participate in, as a party if it so elects, any legal proceedings or actions initiated with respect to the Mortgaged Property in connection with any Environmental Law or Hazardous Substance, and Mortgagor shall pay all attorneys' fees and disbursements incurred by Mortgagee in connection therewith. Upon Mortgagee's reasonable request, at any time and from time to time while this Mortgage is in effect, Mortgagor shall provide (i) an inspection or audit of the Mortgaged Property prepared by a licensed hydrogeologist or licensed environmental engineer approved by Mortgagee indicating the presence or absence of Hazardous Substances on, in or near the Mortgaged Property, and (ii) an inspection or audit of the Mortgaged Property prepared by a duly qualified engineering or consulting firm approved by Mortgagee, indicating the presence or absence of Asbestos on the Mortgaged Property. The cost and expense of such audit or inspection shall be paid by Mortgagor. If Mortgagor fails to provide any inspection or audit required pursuant to this Paragraph 33 within thirty (30) days after such request, Mortgagee may order same, and Mortgagor hereby grants to Mortgagee and its employees and agents access to

the Mortgaged Property and a license to undertake such inspection or audit. The cost of such inspection or audit may be added to the Debt and shall bear interest thereafter until paid at the Default Rate. In the event that any environmental site assessment report prepared in connection with such inspection or audit recommends that an operations and maintenance plan be implemented for Asbestos or any Hazardous Substance, Mortgagor shall cause such operations and maintenance plan to be prepared and implemented at Mortgagor's expense upon request of Mortgagee. In the event that any investigation, site monitoring, containment cleanup, removal, restoration or other work of any kind is reasonably necessary or desirable under an applicable Environmental Law (the **"Remedial Work"),** Mortgagor shall commence all such Remedial Work within thirty (30) days after written demand by Mortgagee for performance thereof (or such shorter period of time as may be required under applicable law) and thereafter diligently prosecute to completion all such Remedial Work within ninety (90) days after written demand by Mortgagee for performance thereof (or such shorter period of time as may be required under applicable law). All Remedial Work shall be performed by contractors approved in advance by Mortgagee, and under the supervision of a consulting engineer approved by Mortgagee. All costs and expenses of such Remedial Work shall be paid by Mortgagor including, without limitation, Mortgagee's attorneys' fees and disbursements incurred in connection with monitoring or review of such Remedial Work. In the event Mortgagor shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Mortgagee may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof, or incurred in connection therewith, may be added to the Debt and shall bear interest thereafter until paid at the Default Rate.

34. **Indemnification.** In addition to any other indemnifications provided herein or in the other Loan Documents, Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including, without limitation, reasonable attorneys' fees, whether in-house staff, retained firms, or otherwise, and disbursements), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Substance or Asbestos on, from, or affecting the Mortgaged Property; (g) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Substance or Asbestos; (h) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Substance or Asbestos; (i) any violation of the Environmental Laws, which are based upon or in any way related to such Hazardous Substance or Asbestos including, without limitation, the costs and expenses of any Remedial Work, attorneys and consultant fees and disbursements, investigation and laboratory fees, court costs, and litigation expenses; (j) any

failure of the Mortgaged Property to comply with any Access Laws; (k) any representation or warranty made in the Note, this Mortgage or any of the other Loan Documents being false or misleading in any material respect as of the date such representation or warranty was made; (1) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Mortgaged Property or any part thereof under any legal requirement or any liability asserted against Mortgagee with respect thereto, including mortgage brokerage fees; (m) any ongoing matters arising out of the transaction contemplated by this Mortgage, the Note and the Loan Documents and the Debt (including, but not limited to, all costs and any reappraisals of the Mortgaged Property or any other collateral for the Debt), (n) the claims of any lessee of any or any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease, (o) any amounts payable to Mortgagee by reason of the application of this paragraph shall be secured by this Mortgage and shall become immediately due and payable and shall bear interest at the Default Rate from the date the loss or damage is sustained by Mortgagee until paid and any amendment to, or restructuring of, the Debt and the Loan Documents, (p) any and all lawful action that may be taken by Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Mortgagor, any Guarantor and/or any partner, member, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding, and (q) the past, current and/or future sale or offering for sale of any interests in Mortgagor, including, without limitation, liabilities under any applicable securities or blue sky laws. All sums expended by Mortgagee shall be payable on demand and, until reimbursed by Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and shall bear interest at the Default Rate. The obligations and liabilities of Mortgagor under this <u>Paragraph 34</u> shall survive the termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including, but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

35. **Notices.** Any notice, demand, statement, request or consent made hereunder shall be in writing, addressed to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Mortgagor or Mortgagee, as the case may be, shall designate in writing, and shall be deemed to be received by the addressee on (i) the day such notice is personally delivered to such addressee, (ii) the third (3rd) day following the day such notice is deposited with the United States postal service first class certified mail, return receipt requested, (iii) the day following the day on which such notice is delivered to a nationally recognized overnight courier delivery service, or (iv) the day facsimile transmission is confirmed after transmission of such notice by telecopy to such telecopier number as Mortgagor or Mortgagee, as the case may be, shall have previously designated in writing.

36. **Authority.** (a) Mortgagor (and the undersigned representative of Mortgagor, if any) represent and warrant that it (or they, as the case may be) has full power, authority and right to execute, deliver and perform its obligations pursuant to this Mortgage, and to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, warrant, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed; and (b)

Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

37.   **Non-Waiver.**        The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Any consent or approval by Mortgagee in any single instance shall not be deemed or construed to be Mortgagee's consent or approval in any like matter arising at a subsequent date. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note, or any of the other Loan Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or any of the other Loan Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its sole discretion, may elect.  Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage.  The rights and remedies of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

38.   **No Oral Change.**        This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

39.   **Liability.**        If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.  Subject to the provisions hereof requiring Mortgagee's consent to any transfer of the Mortgaged Property, this Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

40.   **Inapplicable Provision.** If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

41.   **Headings, Etc.**        The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

42.  **Duplicate Originals.** This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

43.  **Definitions.**  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word **"Mortgagor"** shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Mortgagee" shall mean "Mortgagee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words **"Mortgaged Property"** shall include any portion of the Mortgaged Property and any interest therein and the words **"attorneys' fees"** shall include any and all attorneys' fees, paralegal and law clerk fees, including, without limitation, fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and Collateral and enforcing its rights hereunder.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

44.  **Assignments.**        Mortgagee shall have the right to assign or transfer its rights under this Mortgage without limitation.  Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage.

45.  **Waiver of Jury Trial.**        **MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THIS MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.**

46.  **Miscellaneous.**

(a)     The Loan Documents contain the entire agreement between Mortgagor and Mortgagee relating to or connected with the Loan.  Any other agreements relating to or connected with the Loan not expressly set forth in the Loan Documents are null and void and superseded in their entirety by the provisions of the Loan Documents.

(b)     Mortgagor represents and warrants to Mortgagee that there has not been committed by Mortgagor or any other person in occupancy of or involved with the

operation or use of the Mortgaged Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Mortgaged Property or any part thereof or any monies paid in performance of Mortgagor's obligations under the Note or under any of the other Loan Documents.  Mortgagor hereby covenants and agrees not to commit, permit or suffer to exist any act, omission or circumstance affording such right of forfeiture.  In furtherance thereof, Mortgagor hereby indemnifies Mortgagee and agrees to defend and hold Mortgagee harmless from and against any loss, damage or injury by reason of the breach of the covenants and agreements or the representations and warranties set forth in this paragraph. Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against Mortgagor or all or any part of the Mortgaged Property under any federal or state law for which forfeiture of the Mortgaged Property or any part thereof or of any monies paid in performance of Mortgagor's obligations under the Loan Documents is a potential result, shall, at the election of Mortgagee, constitute an Event of Default hereunder without notice or opportunity to cure.

(c)     Mortgagor acknowledges that, with respect to the Loan, Mortgagor is relying solely on its own judgment and advisors in entering into the Loan without relying in any manner on any statements, representations or recommendations of Mortgagee or any parent, subsidiary or affiliate of Mortgagee.  Mortgagor acknowledges that Mortgagee engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of the Mortgagor or its affiliates. Mortgagor acknowledges that it is represented by competent counsel and has consulted counsel before executing the Loan Documents.

(d)     Mortgagor covenants and agrees to pay Mortgagee upon receipt of written notice from Mortgagee, all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements and the costs and expenses of any title insurance company, appraisers, engineers or surveyors) incurred by Mortgagee in connection with (i) the preparation, negotiation, execution and delivery of this Mortgage and the other Loan Documents; (ii) Mortgagor's performance of and compliance with Mortgagor's respective agreements and covenants contained in this Mortgage and the other Loan Documents on its part to be performed or complied with after the date hereof; (iii) Mortgagee's performance and compliance with all agreements and conditions contained in this Mortgage and the other Loan Documents on its part to be performed or complied with after the date hereof; (iv) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications to this Mortgage and the other Loan Documents; and (v) the filing and recording fees and expenses, title insurance fees and expenses, and other similar expenses incurred in creating and perfecting the lien in favor of Mortgagee pursuant to this Mortgage and the other Loan Documents.

(e)     This Mortgage shall be governed by and construed in accordance with the laws of the State of New York and the applicable laws of the United States of America.

(f)     Mortgagee shall not be obligated to perform or discharge any obligation of the Mortgagor as a result of the collateral assignment hereby effected, and the Mortgagor hereby agrees to indemnify and hold the Mortgagee harmless from and against any

and all liability, loss or damage which the Mortgagee may incur by reason of any act of the Mortgagee under this Mortgage, other than as a result of the Mortgagee's willful misconduct or gross negligence. Should the Mortgagee incur any such liability, loss or damage by reason of this Mortgage and which is covered by the foregoing indemnity, or in defense against any such claims or demands, or perform any acts or covenants on the part of Mortgagor to be performed under any lease, or pay for the account of the Mortgagor any and all sums, costs and expenses for the discharge of taxes, assessments, water rents or other liens against the Mortgaged Property or any part thereof, or on account of insurance premiums or repairs, and also any amounts and expenses necessary to perform any covenants and conditions to be performed on the part of the Mortgagor under any lease, the amount thereof, including costs, expenses and attorneys' fees, together with interest thereon at the Default Rate from the date such expenses were paid by the Mortgagee to the date of payment to the Mortgagee by the Mortgagor, shall be included in the obligations secured by this Mortgage, and the Mortgagor shall reimburse the Mortgagee therefor upon demand.

47. **Section 291-f Agreement.**   This Mortgage is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and shall be entitled to the benefits afforded thereby. Mortgagor shall (unless such notice is contained in such commercial lease) deliver notice of this Mortgage in form and substance reasonably acceptable to Mortgagee, to all present and future holders of any interest in any commercial lease, by assignment or otherwise, and shall take such other action as may now or hereafter be reasonably required to afford Mortgagee the fall protections and benefits of Section 291-f. Mortgagor shall request the recipient of any such notice to acknowledge the receipt thereof.

48. **Cross Default.**   This Mortgage, the Note, and the Loan Documents are cross defaulted with any loan made by Mortgagee to which the Guarantor of this Mortgage, Note, and Loan Documents, is a signatory, surety, or Guarantor (the **"Cross Default Loans"**). Upon such Event of Default hereunder, Mortgagee shall be permitted to exercise all remedies under the Mortgage, the Note and the loan documents of the Cross Default Loans. Upon such Event of Default under any of the Cross Default Loans, Mortgagee shall be permitted to exercise all remedies under this Mortgage, the accompanying Note and Loan Documents. Upon an occurrence of any Event of Default by Borrower on any of the Cross Default Loans, the Mortgagee, at its sole discretion, may enforce that any sums owed to Mortgagee and are due on any of the Cross Default Loans, will be paid up as part of any payoff of any Cross Default Loans, or out of interest reserve accounts held by Mortgagee (i.e. any payoff letter issued by Mortgagee may include amounts due on any of the Cross Default Loans).

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, Mortgagor has executed this instrument the day and year first above written.

**BD781 LLC**

By: _____

Joseph Rubin
Authorized Signatory

CF   STATE OF NEW ~~YORK~~ Jersey )
                                   ) ss:
COUNTY OF ___Ocea___              )

On the May 17, 2022 before me, the undersigned, a Notary Public in and for said State, personally appeared, JOSEPH RUBIN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

Daniel Y. Ross, Esq.
Attorney At Law
State Of New Jersey

**RIVERSIDE ABSTRACT, LLC**
As Agent for
**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
**LEGAL DESCRIPTION**

Title No.: **RANY-47421**

**Parcel I:**
**To be formed from part of Lot 7:**
All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point in the southerly sideline of St. John's Place (70' wide), in the common line between Lot 11 and Lot 12, therein distant of 176.08 feet as measured easterly from the northeasterly sideline of Washington Avenue (80' wide) and from said point of beginning;

RUNNING THENCE along the common line between Lot 11 and Lot 12, southerly along a line at right angles to St. John's Place, a distance of 98 feet 9 inches to a point in the common line between Lot 11 and Lot 6;

THENCE along said common line, easterly along a line parallel with the southerly sideline of St. John's Place, a distance of 14 feet to an angle point in the same;

THENCE continuing along said common line, southerly along a line parallel with Washington Avenue, a distance of 27 feet 10 ½ inches to a point in the common line between Lot 11 and Lot 5;

THENCE along said common line, southwesterly along a line at right angles to St. Johns Place, a distance of 12 feet 8 7/8 inches to a point in the common line between Lot 11 and Lot 50;

THENCE along said common line, easterly along a line nearly parallel with St. John's Place, a distance of 25 feet to a point in the common line between Lot 11 and Lot 17;

THENCE along said common line, northerly along a line at right angles to St. John's Place, a distance of 137 feet to a point in the aforementioned southerly sideline of St. John's Place;

THENCE westerly along the southerly sideline of St. John's Place, a distance of 50 feet and 3 inches to the point and place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Block 1177, Lot 11, (Formed from part of old Lot 7), Kings County and also known as Parcel I: N/A St Johns Place, Brooklyn, NY 11238.

**Parcel II:**
**To be formed from part of Lot 7:**
All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point in the northerly sideline of Lincoln Place (70' wide), in the common line between Lot 50 and Lot 1, therein distant of 86 feet as measured easterly along the same from its intersection with the northeasterly sideline of Washington Avenue (80' wide) and from said point of beginning;

RUNNING THENCE along the common line between Lot 50, with Lot 1, Lot 2, Lot 3 and Lot 4, northerly along a line at right angles to Lincoln Place, a distance of 125 feet to a point in the common line between Lot 50 and Lot 11;

**RIVERSIDE ABSTRACT, LLC**
As Agent for
**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
**SCHEDULE A continued**

THENCE along said common line, easterly along a line nearly parallel with the northerly sideline of Lincoln Place, a distance of 25 feet to an angle point in the same;

THENCE continuing along said common line, northerly along a line at right angles to Lincoln Place, a distance of 6 feet to a point in the centerline of the block, in the common line between Lot 50 and Lot 17;

THENCE along said common line, easterly along the center line of the block and also parallel with the northerly sideline of Lincoln Place, a distance of 150 feet to a point in the easterly line of Lot 50;

THENCE along said line, Southerly along a line at right angles to Lincoln Place, a distance of 31 feet to a point in the common line between Lot 50 and Lot 41;

THENCE along the common line between Lot 50, with Lot 41, Lot 42, Lot 44, Lot 45, Lot 46 and Lot 47, westerly along a line parallel to the northerly sideline of Lincoln Place, a distance of 150 feet to a point in the common line between Lot 50 and Lot 47;

THENCE along said common line, southerly along a line parallel with the first course, a distance of 100 feet to the point in the aforesaid northerly sideline of Lincoln Place;

THENCE westerly along the northerly sideline of Lincoln Place, a distance of 25 feet to the point and place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Block 1177, Lot 50, (Formed from part of old Lot 7), Kings County and also known as Parcel II: N/A Lincoln Place, Brooklyn, NY 11238.